IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| DAVID COCHRUN, | : |  |
|  | : | Case No. 2:13-CV-00538 |
| **Plaintiff,** | : |  |
|  | : | **JUDGE ALGENON L. MARBLEY** |
| v. | : |  |
|  | : | Magistrate Judge Kemp |
| TANYA ARSH, *et al.*, | : |  |
|  | : |  |
| **Defendants.** | : |  |

## OPINION & ORDER

This matter is before the Court on Defendants Tanya Arsh, Mark Kouns, Douglas Sarff, Ronald Garrabrant, Dax Blake, and Gary Hickman's Motion to Dismiss Plaintiff's First Amended Complaint. (Doc. 22). Plaintiff David Cochrun brings claims of First Amendment Retaliation under § 1983, against all named Defendants, jointly and severally. Defendants move to dismiss all claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth herein, Defendant's Motion is **GRANTED**.

### I. BACKGROUND

Plaintiff was an employee of the City of Columbus, Ohio and worked within the Department of Public Utilities, Division of Sewerage and Drainage. (Doc. 20, ¶ 1). Plaintiff alleges that at some time prior to March 2009, Plaintiff married a co-worker, Tammy, and that he was informed by a union representative that "management was not pleased with two workers in the same division being married." (*Id.*, ¶ 8). Plaintiff maintains that in March 2009, he was confronted on two nights by a co-worker who allegedly shouted and screamed at Plaintiff's wife. (*Id.*, ¶¶ 9-10). Plaintiff further asserts that the co-worker was an African-American who had a history as a felon and of carrying a firearm in his car. (*Id.*, ¶ 9). Plaintiff further attests that out

of concern for the safety of his wife, he reported the incidents to management, for which an investigation was allegedly led by Defendant Sarff. (*Id.*, ¶¶ 11-12).

Plaintiff alleges that "rather than investigate Plaintiff's concerns, Sarff prepared disciplinary charges" against both Plaintiff and the co-worker. (*Id.*, ¶ 14). Because Sarff "misdirected the notice" to an incorrect address, and the time for properly serving charges against the co-worker had elapsed under the collective bargaining agreement, only Plaintiff faced discipline. (*Id.*, ¶ 14, 15). Plaintiff maintains that following this series of events, Plaintiff made "numerous complaints to management… including the highest levels of the City" regarding what he considered to be "discriminatory and unfair treatment relative to the confrontation with the co-worker," as well as his concerns about the safety of his wife at work. (*Id.*, ¶ 16). Plaintiff further alleges that he met with the City Human Resources EEOC program with "complaints about the disparate treatment." (*Id.*). Plaintiff maintains that all the named Defendants knew of Plaintiff's course of conduct. (*Id.*).

Plaintiff alleges that following the beginning of his complaints, his "work environment deteriorated and management attitudes towards him became hostile," including that he was "subjected to scrutiny" directed by Defendant Sarff, with the "knowledge and acquiescence" of all named Defendants. (*Id.*, ¶ 17,18). This scrutiny, Plaintiff maintains, led to multiple charges of rule violations and increased discipline. (*Id.*, ¶ 19). In the summer of 2010, Plaintiff alleges that he was "written off for sick leave based on job stress." (*Id.*, ¶ 20). During this period of leave, and before any formal process allegedly required by the AFSCME collective bargaining agreement or the City's due process policies, Plaintiff contends that he was contacted by former Defendant, and Local 1632's President, Moore, and told that he (Plaintiff) was to be terminated.

2

(*Id.*, ¶ 21).  Union President Moore allegedly advised Plaintiff to execute a "Last Change Agreement" ("LCA") in order to avoid termination, which he did.  (*Id.*, ¶ 21, 22).

      The "LCA" stipulates that:

> It is agreed by all of the parties that if the employee is found in violation of any Central Work Rule by a Disciplinary Hearing Officer, within three (3) years from the effective date of this agreement, the appropriate discipline shall be termination from his position. The Department need only prove that the employee violated any work rule(s) in order to enforce this agreement.

(Doc. 22-2 at 1).

      Plaintiff alleges that on April 23, 2011, with the "LCA" in effect, Plaintiff reported late to work because his alarm did not go off due to a power outage.  (Doc. 20, ¶ 23).  Once at work, Plaintiff maintains that he filled out a "Request for Leave" form and that Defendant Hickman endorsed this request on April 25th.  (*Id.*, ¶ 24).  Plaintiff further maintains that Defendant Sarff, "with the knowledge and direction of those Defendants superior to him, including Arsh, Kouns and Blake, overrode Defendant Hickman's approval, and ordered the absence changed from approved to 'AWOL.'"  (*Id.*, ¶ 25).  Plaintiff attests that on April 29, 2011, he was notified that he was charged with a violation of the absenteeism rule, and was subsequently questioned by Defendant Garrabrant.  (*Id.*, ¶ 26).

      Plaintiff argues that Defendant Garrabrant was "under direction from the other Defendants to recommend that the authority go forward with discipline," and further asserts that Garrabrant prepared a memo "which concealed the fact that operations had approved the original leave request."  In addition, Plaintiff alleges that with the "complicity of Defendant Garrabrant," this information was conceded from Plaintiff.  (*Id.*)  Plaintiff further alleges that "[d]efendants had by this time conspired to use the trumped-up charge to compel Plaintiff's resignation."  (*Id.*, ¶ 27).  Plaintiff contends that on June 7, 2011, he was called to appear at City Hall, where he was

3

informed by, or at least informed in the presence of Defendant Garrabrant that the City intended to terminate his employment. (*Id.*, ¶ 28).  The City's intention was later confirmed by Local 1632's President, Moore, who then allegedly urged Plaintiff to resign.  (*Id.*).  Plaintiff maintains that relying on information provided by Defendant Garrabrant and Mr. Moore, Plaintiff resigned on June 7, 2011.  (*Id.*).

After allegedly learning that Defendant Garrabrant and Mr. Moore had given Plaintiff false information, Plaintiff asserts that he wrote to Defendant Arsh to inform her that he had resigned "under assumptions of fact which were not true and sought to withdraw the resignation"; Defendant Arsh allegedly never replied to his request.  (*Id.*, ¶ 30).  As a result of these incidents, Plaintiff alleges that the Defendants, "jointly and severally . . . retaliated against Plaintiff because of his protected expression under the First and Fourteenth Amendments . . . ." and, "manipulated Plaintiff in order to obtain his resignation, which amounted to constructive discharge."  (*Id.*, ¶ 36, 37).

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows for a case to be dismissed for "failure to state a claim upon which relief can be granted."  Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005).  Thus, the Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).  The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).  Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted).

4

Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  But the complaint must "'give the defendant fair notice of what the claim is, and the grounds upon which it rests.'" *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).  In short, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

### III.    ANALYSIS

Defendants argue that Plaintiff's First Amended Complaint should be dismissed for failure properly to plead his claims, including conspiracy, and failure to allege conduct committed by each individual Defendant that could support his claim of First Amendment Retaliation.  (Doc 22 at 2).  Defendants, furthermore, assert that Plaintiff cannot establish his claims, as a matter of law, because in complaining of disparate treatment and concern for his wife's safety, he did not exercise his First Amendment right on a matter of public concern and thus did not engage in protected speech.  (*Id.* at 12).

Defendants maintain that Plaintiff was not subjected to an adverse employment action, in that he resigned his employment at the urging of his union representative and does not plead facts sufficient to allege a materially adverse change in his working conditions.  (*Id.* at 13). Defendants also assert that their conduct was not motivated by Plaintiff's alleged protected speech.  Defendants, moreover, allege that they are entitled to qualified immunity.  (*Id.* at 5).  In conclusion, Defendants argue that Plaintiff's claim is truly a "failure to represent" claim "couched as a § 1983 claim." (*Id.* at 16).

Plaintiff responds that the facts alleged are sufficient to establish his claim (Doc. 24 at 4-5), but offers no response to Defendants' arguments against his claim for conspiracy (*see* Doc.

5

24). Plaintiff further argues that because he faced surveillance, discipline after he continued to bring his concerns to superiors, and then was "constructively discharged" subsequent to his alleged protected speech, Plaintiff did face an adverse employment action. (*Id.* at 5). Plaintiff also asserts that his speech embraced a "matter of public concern" in that the expression was "*never* about improving his own lot," and that the speech does not need to be made in a public forum. (*Id.* at 6-7) (emphasis in original).

In support of his conclusions, Plaintiff cites *Whitney v. City of Milan*, in which the Sixth Circuit held that an employee's speech in support of another employee's lawsuit alleging workplace discrimination qualified as a matter of public concern. (*Id.* at 7, citing *Whitney v. City of Milan*, 677 F.3d 292 (6th Cir. 2012)). Plaintiff, moreover, argues that Defendants are not entitled to a defense of qualified immunity on the grounds that "[if] the allegations of the First Amended Complaint allow the inference of a retaliatory course of conduct leading to constructive discharge following protected activity, Defendants must defend." (*Id.* at 9).

### A. Conspiracy under § 1983

Plaintiff alleges that the defendants "conspired" (Doc. 20, ¶ 27) "jointly and severally" (*id.*, ¶ 36). Accordingly, the Court construes Plaintiff's allegation as a § 1983 conspiracy claim.

The Sixth Circuit has set forth the standard for proving a § 1983 conspiracy claim:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985); *see also Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003). The Court of Appeals has further held that a conspiracy claim must be pleaded

"with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Spadafore*, 330 F.3d at 854 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).  This pleading standard, moreover, is "relatively strict."  *Fieger v. Cox*, 524 F.3d 770 (6th Cir. 2008).

Where a Complaint did not contain a separate count for conspiracy, under § 1983, and included only "legal conclusion," such as "Defendants have conspired among themselves…" *Heyne*, 655 F.3d at 563.  Thus, where,

> [t]he Amended Complaint contains other allegations about the Individual Defendants' conferring with one another at different points in [the plaintiff's] disciplinary process, but it does not contain any more specific allegations of a plan or agreement to violate his constitutional rights.

*Id.*, at 564.

Plaintiff in the present case similarly does not plead a separate count for conspiracy and offers only legal conclusions devoid of factual allegations that might sustain such a claim. Plaintiff alleges that the "other Defendants" knew of actions taken by the various individual Defendants, which would not be uncommon within a single department of an organization, but provides no factual allegations to support the conclusion that there was an agreement or plan between the Defendants to violate Plaintiff's constitutional rights.  (Doc. 20, ¶¶ 16, 18, 19, 25, 26).  Plaintiff, furthermore, only alleges once that Defendants "conspired":  "Defendants had by this time conspired to use the trumped-up charge to compel Plaintiff's resignation."  (*Id.*, 27) (following Plaintiff's allegations regarding the "Request for Leave" override).  This statement, in addition to Plaintiff's general allegations of shared knowledge, is far too conclusory to meet his pleading burden.

7

Legal conclusions cloaked as factual allegations, such as those included in Plaintiff's First Amended Complaint, are insufficient to sustain a conspiracy claim under § 1983. Plaintiff's claim of Conspiracy is accordingly dismissed.

### B. Individual Claims under § 1983 as against each Defendant

As outlined above, a pleading must allege more than bare and conclusory allegations in order to survive a motion to dismiss.  In keeping with the Supreme Court's approach in *Iqbal*, this Court begins its analysis "by identifying the allegations in the complaint that are entitled to the assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).  Plaintiff failed to allege a claim of First Amendment Retaliation against Defendants Arsh, Kouns, Blake, Hickman, and Garrabrant.  The only Defendant against whom Plaintiff has provided more than bare and conclusory allegations is Defendant Sarff.

Plaintiff's first mention of the named Defendants, excluding Defendant Sarff, appears at page four of the First Amended Complaint, where Plaintiff conclusorily states that all the "named Defendants . . . were aware of Plaintiff's continuing course of conduct."  (Doc. 20, ¶ 16) (in reference to Defendant's complaints of disparate treatment).  Plaintiff also maintains that the "scrutiny" allegedly directed by Defendant Sarff was perpetrated with the "knowledge and acquiescence of the other named individual Defendants," (Doc. 20, ¶ 18) and that "the Defendants began putting Plaintiff through disciplinary hearings."  (Doc. 20, ¶ 19).

Defendant Hickman is only specifically mentioned in relation to the leave request that Plaintiff filed after arriving late to work due to a power outage.  (Doc. 20 ¶¶ 24-26). There is no allegation that the original leave request approval was improperly overridden, nor that the "concealment" of the override was itself improper.  Nor does Plaintiff connect Defendant Hickman's actions to his "protected speech" through any more than bare and conclusory

8

allegations. Plaintiff's claim of First Amendment Retaliation against Defendant Hickman is accordingly dismissed.

Plaintiff's only mention of Defendants Arsh, Kouns, and Blake any with specificity appears on page six of the First Amended Complaint where Plaintiff alleges that:

> Defendant Sarff, with the knowledge and direction of those defendants superior to him, including Defendants Arsh, Kouns, and Blake," overrode Defendant Hickman's approval and ordered the absence changed from approved to "AWOL."

(Doc. 20, ¶ 25).  The above allegation of "knowledge and direction" of the "Request for Leave" override, combined with conclusory allegations made toward "all named Defendants," is simply insufficient to properly establish a claim of First Amendment Retaliation under § 1983.

As with Defendant Hickman, Plaintiff also alleges conduct by Defendant Garrabrant specifically only in regard to the overridden "Request for Leave" form.  (Doc. 20, ¶¶ 26, 28) Plaintiff alleges that following the request form override, Plaintiff was questioned by Defendant Garrabrant, an employee with Human Resources within the Department, and that Garrabrant, "who was under direction from the other Defendants to recommend that the authority go forward with discipline," prepared a memorandum that allegedly "concealed" the fact that the leave request had at first been approved.  (Id., ¶ 26).  Plaintiff alleges no specific conduct on the part of Defendant Garrabrant to support a claim of First Amendment Retaliation.  Plaintiff's claim against Defendant Garrabrant is accordingly dismissed.

### C. Plaintiff's § 1983 Claim, Generally

As against Defendant Sarff, for whom Plaintiff pleaded First Amendment Retaliation under § 1983, Plaintiff's Complaint comports with Fed. Civ. P. R. 8(a).  Plaintiff, however, has still failed to allege facts sufficient to survive a motion to dismiss.  To survive a motion to dismiss a claim under 42 U.S.C. § 1983, the plaintiff must properly allege that: (1) the defendant

9

was acting under color of state law; and (2) the offending conduct deprived the plaintiff of rights secured under federal law. *Mezibov v. Allen*, 411 F.3d 712, 716-17 (6th Cir. 2005) (where the first element was satisfied because the plaintiff alleged that the defendant made defamatory statements to the media in his role as prosecutor) (quoting *Bloch v. Ribar,* 156 F.3d 673, 677 (6th Cir. 1998)).  By alleging that Defendants acted in their capacity as city employees, Plaintiff has sufficiently alleged the first prong.

In order to establish the second prong of the test in the present case, where a plaintiff alleges that a government official retaliated against he or she for exercising constitutional rights, the plaintiff must further establish three sub-elements: (1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct.  *Id.* at 717; *see also Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

In order to determine whether a public employee's speech is constitutionally protected, the Supreme Court has determined that a plaintiff must show:  (1) that his speech was made as a private citizen, rather than pursuant to his official duties; (2) that his speech involved a matter of public concern; and (3) that his interest as a citizen in speaking on the matter outweighed the state's interest, as an employer, in "promoting the efficiency of the public services it performs through its employees." *Garcetti v. Ceballos*, 547 U.S. 410, 417-418 (2006).

Plaintiff alleges two instances of protected speech.  (Doc. 24 at 6).  The first instance is Plaintiff's complaint of a co-worker's "shouting and screaming" at Plaintiff's wife because he

10

feared for her safety. (Doc. 20, ¶ 10) The second instance is Plaintiff's complaints of disparate treatment in the discipline that he faced but his co-worker did not.[1] (*Id.*, ¶¶ 14-16).

The Supreme Court in *Garcetti* explained that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 540 (6th Cir, 2012) (quoting *Garcetti*, 547 U.S. at 421). Such determinations are innately context-driven. The Sixth Circuit held that where a plaintiff pleaded "generalized allegations of disparate treatment and workplace abuse . . . . and retaliation without further definition," the plaintiff failed to meet the pleading standard at all, and where the plaintiff complained of improper use of city funds to "both her superiors *and* outside her chain of command, as a concerned citizen addressing an issue of public corruption," the protected speech was undertaken as a "private citizen." *Id.*, at 542 (emphasis supplied); (*but see Haynes*, where the plaintiff communicated only up the chain of command, which indicates that he was "speaking in [his] capacity as a public employee contributing to the formation and execution of official policy, not as a member of the public." *Haynes v. City of Circleville, Ohio*, 474 F.3d 357, 364 (6th Cir. 2007) (quoting *Mills v. City of Evansville*, 452 F.3d 646, 648 (7th Cir. 2006)).

In the present case, Plaintiff complained to his superiors, and "the highest levels of the city" of his concern for his wife's safety within the facility, as well as the disparate treatment he felt he faced "relative to the confrontation with the co-worker." (Doc. 20, ¶ 16). Plaintiff's speech, as compared to those plaintiffs discussed above, was make as a public employee in the course of employment, not as a concerned private citizen. Accordingly, Plaintiff fails to satisfy

---

[1] Plaintiff maintains at ¶ 14 of the First Amended Complaint that the co-worker was not disciplined because Defendant Sarff "misdirected the notice to the wrong address, and the time for service of charges under the collective bargaining agreement passed."

11

the first element of the second prong, that his speech was made as a private citizen.  Plaintiff's claim, therefore, fails.

Because the Court finds that Plaintiff failed to meet the pleading burden or allege facts sufficient to establish his claim, it need not address Defendants' defense of qualified immunity.

### IV.    CONCLUSION

Plaintiff failed to state a claim upon which relief can be granted against Defendants under § 1983. Accordingly, for the reasons stated above, Defendants' Motion to Dismiss (Doc. 22) is **GRANTED**.  The case is hereby **DISMISSED**.

**IT IS SO ORDERED.**

                                                     s/Algenon L. Marbley
                                                  **ALGENON L. MARBLEY**
                                                  **UNITED STATES DISTRICT JUDGE**

**DATE:  August 5, 2014**